# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JOHN WOODLIN | * |
| Plaintiff | * |
| v. | *   Civil Action No. RWT-14-25 |
| JOHN WOLFE, et al. | * |
| Defendants | * |

## MEMORANDUM OPINION

Defendants filed a Motion to Dismiss or for Summary Judgment in response to the above-captioned civil rights complaint.[1] ECF No. 13. Plaintiff opposes the motion, ECF No. 15, and moves for appointment of counsel.[2] ECF No. 14. No hearing is needed to address the motions pending before the Court. *See* Local Rule 105.6 (D. Md. 2014). For the reasons that follow, Defendants' motion, construed as a Motion for Summary Judgment, shall be granted and judgment will be entered in their favor.

### Background

Plaintiff John Woodlin ("Woodlin") is a prisoner who at all times relevant to this case was incarcerated at Jessup Correctional Institution (JCI).[3] Woodlin alleges that on July 19, 2012, at approximately 4:30 p.m. he was stabbed by another inmate, John Johnson, who Woodlin

---

[1] Defendants' Motion for Extension of Time (ECF 11) shall be granted *nunc pro tunc*.

[2] A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is a discretionary one, and may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). Upon careful consideration of the motions and previous filings by Plaintiff, the Court finds that he has demonstrated the wherewithal to either articulate the legal and factual basis of his claims himself or secure meaningful assistance in doing so. No hearing is necessary to the disposition of this case and there are no exceptional circumstances that would warrant the appointment of an attorney to represent Plaintiff under §1915(e)(1).

[3] Woodlin is now incarcerated at Maryland Correctional Institution Hagerstown (MCIH).

asserts is a member of the Security Threat Group Dead Men Incorporated (DMI).  ECF No. 1 at 4.  Woodlin asserts that Johnson was not assigned to a cell on "D-tier" in "D Building," but despite Johnson's unauthorized presence in the area Defendant Sergeant Brown simply stood by and watched the assault take place.  *Id*.

In Woodlin's view, Johnson attacked him and Brown permitted the attack because Woodlin is gay and is serving a sentence for a sex offense.  He claims that Brown held the recreation hall door open for Johnson and looked at Woodlin while refraining from intervening on his behalf.  Woodlin believes there was a conspiracy between Johnson and Brown to commit the assault.  *Id*.  Woodlin sustained two stab wounds to his upper back which he claims causes constant pain that prevents him from getting out of bed and causes his right hand to swell.  *Id*.  After the incident, Woodlin was charged with fighting, but claims he was simply attempting to ward off the assault.  *Id*.  Woodlin further alleges that the weapon used by Johnson was a hunting knife of the type purchased from a store, rather than a homemade weapon.  *Id*. at 6.

In addition to Brown, Woodlin names as Defendant Warden John Wolfe on the theory he is responsible for the security of the institution and failed to respond in a timely manner to Woodlin's administrative remedy procedure (ARP) complaint.  ECF No. 1 at 5.  Woodlin also names Chief of Security Allen Gang as a Defendant because it is his duty to make the prison safe and secure.  Woodlin claims Gang failed to do his job properly thereby allowing his assailant to access a knife and stab him repeatedly.  *Id*.  Woodlin alleges Defendant Lt. Hamilton told him he was assaulted due to the nature of his conviction and forged unspecified documents which were returned to Woodlin.  In addition, Woodlin alleges Hamilton told other officers not to mention Woodlin at a meeting held on July 25, 2012.  *Id*.

Woodlin states he is currently on protective custody because the DMI gang still has a contract on his life. *Id*. at 6. He is on medication for pain and anxiety and seeks monetary damages for his pain and suffering.[4] *Id*.

Defendants state in their dispositive motion that on July 19, 2012, at approximately 4:31 p.m., Johnson entered cell D 806 wielding a weapon and attacked Woodlin. ECF No. 13-1 at 3. They admit Johnson was assigned housing in a cell located on a different tier from Woodlin, but Defendants assert that Johnson was not known to be an enemy of Woodlin. ECF No. 13-3. Brown states what when he arrived on the scene he witnessed Johnson with an eight-inch, flat piece of metal sharpened to a point on one end and wrapped in cloth around the other end. ECF No. 13-4. Brown claims that once he noticed the weapon, he "produced his fogger" and ordered Johnson to drop the knife. Although Johnson complied with Brown's order by dropping the knife, he continued to assault Woodlin. *Id*.

Officer Brandon Holmes responded to support Brown and separated Johnson from Woodlin. ECF No. 13-5. With the arrival of two additional officers, Johnson was taken down to the floor after he refused to do so on his own. Once Johnson was restrained, Holmes escorted Woodlin to the medical unit for assessment of his injuries. *Id*.

Woodlin suffered two stab wounds to his right upper back, several puncture wounds to his right arm, and scratches to his lower back. ECF No. 13-6. After he began to have "seizure like activity," an IV was started and 911 was called. *Id*. at 2. Woodlin was transported to the Johns Hopkins Shock Trauma Unit. *Id*.

---

[4]  Defendants incorrectly state that Woodlin seeks injunctive relief. ECF No. 13.

**Standard of Review**

Summary judgment is governed by Fed. R. Civ. P. 56(a), which requires a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial."  *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993).

**Analysis**

In order to prevail on an Eighth Amendment claim of failure to protect from violence, Woodlin must establish that Defendants exhibited deliberate or callous indifference to a specific known risk of harm.  *See Pressly v. Hutto*, 816 F. 2d 977, 979 (4th Cir. 1987).  "Prison

4

conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penologicial objective, any more than it squares with evolving standards of decency.  Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994) (internal citations and quotation marks omitted).  However, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837; *see also Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir. 1997).

The gravamen of Woodlin's claim is that Brown allowed an assault to occur by permitting his assailant to come into an area of the prison where he was not authorized and, once the attack was underway, failing to respond in a prompt manner.[5]  Defendants' focus on whether or not Johnson was listed as an enemy for Woodlin is of no real consequence in light of the nature of the claim raised.  Woodlin carries the claim a step further, however, and asserts Brown conspired with his assailant.

Woodlin's account of the events leading up to the assault makes clear he had no opportunity to observe any sort of cooperation or communication between Brown and Johnson, nor has he provided any evidence that shows, or would permit the Court to infer, the existence of any conspiracy.  In fact, through the course of the investigation into Woodlin's claim, he revealed that the basis of his conspiracy claim is the word of unnamed third parties whose

---

[5]  Woodlin changes his theory of liability in his opposition response and alleges he complained about harassment and threats from "other inmates" as well as Security Threat Groups. ECF No. 15 at 2-4.  His assertions that he voiced generalized claims regarding prison-wide gang conflicts provides no support for the claim regarding the assault he suffered at the hands of Johnson, as there was no notification of a specific, known risk of harm from Johnson which was ignored.

identity was not revealed. ECF No. 13-2 at 10. The investigating officer informed Woodlin that the video of the tier during the assault did not support his assertions that Brown did not respond in a timely manner.[6] *Id*. Additionally, it was noted that Johnson made his way onto Woodlin's tier during a mass movement of inmates returning from the evening meal. *Id*. at 44. When Brown saw the assault taking place, he drew a weapon (a pepper spray fogger) and ordered Johnson to drop his knife, which he did. *Id*. Brown is noted to have placed his foot on top of the knife once it had been dropped. *Id*. at p. 7. Had he left the knife unsecured, Johnson could have retrieved it or another prisoner could have obtained the weapon, placing everyone's safety in jeopardy. Johnson continued to assault Woodlin after dropping the knife, but was restrained by Officer Holmes who grabbed him from behind. *Id*. at p. 44. With the arrival of two other officers, Johnson was forced to the floor, restrained, and removed from the area. Woodlin was then escorted to medical.

While the elimination of all life-threatening, violent assaults in the prison setting is a laudable goal, liability does not attach to correctional officials each time one occurs. To make a finding that a prison official exhibited a callous disregard for the life and safety of a prisoner, more than conjecture, rumor, and speculation is required. Woodlin's assertions that there was a conspiracy and subsequent cover-up of the assault is belied by Johnson's prosecution on charges of attempted murder, assault, and related charges.[7] ECF 13-2 at 80 – 86. His claim that the weapon used against him is not the weapon Defendants assert was recovered at the scene is unsupported by any evidence in the record. Woodlin's own assertion to the contrary fails to

---

[6] Defendants have not provided a copy of that video for the Court's review, nor is there any indication that Woodlin was permitted to review it.

[7] Johnson pled guilty to charges of second degree assault and was sentenced on February 25, 2013, to serve five years consecutive to the term he was currently serving. *See* http://casesearch.courts.state.md.us; *State of Maryland v. Johnson,* Case No. 02K12002283 (Cir. Ct. for Anne Arundel Co. 2013).

create a genuine issue of fact, as he told investigators he was stabbed in the back and told investigators he had his back to the door of the cell when Johnson came in. *Id*. at 6. Woodlin has referenced only unknown sources for his information that Brown allowed Johnson on the tier and that Johnson was carrying out a hit ordered by the DMI. *See id*. at 10 – 11; *see also* ECF No. 15.

Woodlin's claim that Defendants improperly stated that he was assaulted due to the nature of his criminal offense does not state a constitutional claim.[8] During the course of the investigation into the assault, it was discovered that Johnson's motive for assaulting Woodlin may have been his belief that Woodlin had sexually assaulted his brother. ECF No. 13-2 at 6. The only purpose for the statement regarding Woodlin's offense was to clarify the cause for the assault and it was not, as Woodlin would have it, for the purpose of further endangering his life. There was no indication at the time of the investigation that either Woodlin or Johnson were validated members of a Security Threat Group. *Id*. at 7.

To the extent the Complaint can be construed as raising an equal protection claim, Woodlin has failed to allege facts sufficient to support such a claim. To state a viable claim, he must demonstrate that he has been treated differently from other similarly situated individuals and that the unequal treatment was the result of intentional or purposeful discrimination. *See City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439-330 (1985); *Morrison v. Garraghty,* 239 F.3d 648, 653 (4th Cir. 2001). This requires proof that "the decision makers in his case acted with discriminatory purpose." *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987). "Determining whether invidious discriminatory purpose was a motivating factor" behind

---

[8] Woodlin makes a convoluted argument regarding which of his sentences that make up his term of confinement has already been served. ECF No. 16. To the extent Woodlin disagrees with the manner in which his sentences have been construed by the Maryland Division of Correction, he must pursue that claim through the state courts. It will not be addressed in the context of this civil rights case.

a law enforcement officer's conduct "demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266 (1977).  The burden rests on Plaintiff to show that he was treated differently than similarly situated non-minorities. *Id.* Once the showing of intentionally discriminatory unequal treatment is made, the Court then determines whether the disparate treatment can be justified under strict scrutiny. *Id.*

The basis for Woodlin's claim that his rights to equal protection were violated is that he is homosexual and Brown made alleged homophobic comments when Woodlin reported threats and harassment from other inmates.  ECF No. 15 at 3.  Specifically, Woodlin claims Brown told him, "you should know that some dudes are gonna have problems with you getting in the showers with them." *Id*.  As distasteful as that statement may be (assuming that it was made), it only represents a communication to Woodlin of what Brown believed some inmates may believe, and is a far cry from evidence of a discriminatory animus against Woodlin that supports a claim his personal safety was not properly protected because he is gay.  To the extent Woodlin experiences bigotry short of a threat to his safety, correctional officials are not required to eliminate the prejudiced views of the inmate population at large in order to avoid violating Woodlin's constitutional rights.  Thus, the equal protection claim must be dismissed.

A separate Order granting summary judgment in favor of Defendants follows.


November 19, 2014                                          /s/
Date                                                ROGER W. TITUS
                                          UNITED STATES DISTRICT JUDGE